# STATE OF MARYLAND *v*. ROBINSON AND JACKSON

[No. 310, September Term, 1971.]

*Decided April 10, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SMITH, JJ.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City, Anton J. S. Keating, Arrie W. Davis* and *John B. Griffith, Assis-*

*tant State's Attorneys for Baltimore City,* on the brief, for appellant.

*Michael L. Schwartz* for Ronald Andre Jackson, one of appellees; submitted on brief by *Nelson R. Kandel* for James Edward Robinson, other appellee.

HAMMOND, C. J., delivered the opinion of the Court.

We granted the petition of the Attorney General of Maryland asking us to review the decision of the Court of Special Appeals in order to determine whether that Court, in reversing convictions for armed robbery of Ronald Andre Jackson and James Edward Robinson in the Criminal Court of Baltimore, had erred in applying the rule of *Miller v. State,* 231 Md. 215, and *Cooper v. State,* 231 Md. 248, that evidence that an accused in police custody had remained silent in the face of an accusation of his guilt by another is inadmissible against him. We conclude that the Court of Special Appeals did err and will reverse its judgment and affirm the judgments of the Criminal Court of Baltimore.

The State's evidence included testimony that on March 21, 1970 in Baltimore Robinson was driving a black sedan with Jackson on the passenger's side of the front seat. They picked up Lewis Barber and his friend Conyers, who wished to be transported to an intersection some blocks away. Robinson did not stop at the intersection but drove into Druïd Hill Park where he stopped the car and pointed a gun at Barber and obtained from him money, whiskey and a watch. (Barber says he gave the loot to Jackson at Robinson's direction.) Robinson handed the gun to Jackson and told him to hold it on Barber and Conyers, and then started to drive on. After they had gone a short distance, Robinson noticed a police car behind them and told Jackson to throw the gun out of the window and Jackson did so. About fifty yards from where Jackson threw the gun, Robinson stopped the car.

Officer Maher testified for the prosecution that then he

and his police partner, Pereny, "approached Mr. Robinson's vehicle and, at this time, Mr. Barber jumped out of the left-rear seat and stated 'they just robbed me—watch it, they have a gun.' At this point we ordered everybody out of the car, and while my partner patted them down for weapons, I, then, searched the vehicle for further weapons. Mr. Barber stated that [Jackson] threw the gun out of the window." At this point there was an objection to the last sentence. Judge O'Donnell overruled the objection, holding that the statement was part of the res gestae (the gun was found and identified as that held by Robinson).

Officer Pereny next testified. He said without objection that he and Officer Maher approached the Robinson car, Maher going to the driver's side and he to the other side, and that "we opened the doors of the vehicle, and the subjects on my side of the car remained in the car, and the ones on Officer Maher's side began to get out. Mr. Barber had gotten out of the back seat. I could just barely hear him say to my partner that 'we have been robbed' and something to the effect 'they have a gun' * * * on the right hand side of the driver's seat was the defendant, Mr. Jackson * * *."

Barber, who was the first witness for the State, testified that all four men got out of the car and put their hands up in response to a command from the police and immediately he told the police that "they" had just robbed him and that they had thrown a gun out of the car. Judge O'Donnell admitted his statement over objection as part of the res gestae.

When Jackson testified, he said on direct examination that the pistol was his and he threw it out of the window of the car because he was on parole. He said, too, that Barber did not tell the police he had been robbed until everyone was out of the car but "no, he had told them as soon as the police pulled up." On cross-examination he was asked: "What did you first say to the police when they pulled you over?" He answered: "I ain't say nothing because they stopped him [Robinson], it was his

car." He next was asked: "And you said nothing at that point?" and his answer was "no, sir, I didn't say nothing at all." There was no objection to either question and no motion to strike either answer. When the State's Attorney asked the question a third time, there was an objection. The State's Attorney explained to Judge O'Donnell at his request: "The question is, at the point where the police stopped the car, did Mr. Jackson say anything or volunteer any information?" Again there was an objection. Judge O'Donnell said: "I will overrule it, as to whether or not he said anything or volunteered any information. If it goes to the issue, did he say anything in response to interrogation, I would sustain the objection." Then, the State's Attorney asked Jackson: "Did you spontaneously say anything, Mr. * * *," to which there was an objection which was overruled, and the answer was: "No, I didn't say anything at all."

It is on this record that Judge DeWeese Carter, for the Court of Special Appeals, held that Jackson and Robinson were in custody when Barber said they had robbed him and that "the court erred in permitting in evidence Jackson's answer that he remained silent in the face of Barber's accusation." Judge Carter further said that: "During cross-examination of the appellant Jackson, he was asked whether he said anything in response to Barber's statement that they robbed him and had a gun, made after police custody attached."

It is far from clear that police custody had attached when Barber said Jackson and Robinson had robbed him. Jackson himself testified that it was before and this was also the recollection of Officer Maher and in part that of Officer Pereny. But if it be assumed for the purpose of the decision that police custody had attached, *Barnes and Burgess v. State,* 1 Md. App. 123, 127, nothing else in Judge Carter's statement of the question to be decided, or the answer, is warranted, or supported by the record.

There is nothing to show, or even suggest, that Barber's statement and Jackson's silence were connected in any way or that the State sought to connect them. Testi-

mony that Barber accused Jackson and Robinson came in four times (twice without objection and twice over objection as part of the res gestae) and clearly was offered to show that he had been robbed by the defendants. Jackson's first answer suggests that he had no idea that the question was intended to be connected with Barber's statement for he said he had said nothing because it was Robinson's car that had been stopped by the police. The questions to Jackson as to whether he blurted out anything to the police were asked long after the last testimony as to Barber's statement and without reference, express or implied, to that statement. Twice the question was asked and twice it was answered without any protest of any kind from the defense. Maryland Rule 725 f (a criminal rule) provides that exceptions to evidence shall be governed by the provisions of Rule 522. Rule 522 d 2 provides: "Every objection to the admissibility of evidence shall be made at the time such evidence is offered, or as soon thereafter as the objection to its admissibility shall have become apparent, otherwise the objection shall be treated as waived." See *Glover v. Gar-Bern Building and Development Co., Inc.,* 264 Md. 388, 287 A. 2d 29.

If for the purpose of decision we waive the obvious waiver of Robinson and Jackson under the Rule, they are not helped. The record leaves no doubt that the purpose of the State in this aspect of its cross-examination of Jackson was to elicit from him the making of a spontaneous inculpatory statement that would not be within the ban or bar of the Miranda rule (*Miranda v. Arizona,* 384 U. S. 436, 16 L.Ed.2d 694), and that everyone understood this. Judge O'Donnell's ruling—permitting a question as to a "blurt" and forbidding a question as to answers to police interrogation—makes it clear that he so understood it.

We see no error in permitting an answer to a question seeking an inculpatory answer (which twice before had been answered without objection) as to whether Jackson had spontaneously said anything when he alighted from the car, particularly since no inculpation resulted.

It also is clear that in no way did the State seek to connect Barber's "blurt" and Jackson's silence in the minds of the jury or otherwise, and there is no hint that the jury was given the opportunity to consider a connection or draw any inferences in regard to the interpretation of the two separate pieces of testimony. There was no request for an instruction on the point and the court did not instruct as to it. It was conceded at argument before us that the rule invoked by the Court of Special Appeals was not argued to the jury in any way or to any extent. It was not advanced at the motion for a new trial. Apparently the first time the point now relied on by Jackson and Robinson and accepted by the Court of Special Appeals was thought of by anybody in the case was when the appellants in that Court prepared their briefs.

We think it would be far-fetched to the point of unreason to hold that permitting Jackson to say that he said nothing when he first encountered the police, in answer to the question whether he had spoken spontaneously, had anything to do with the jury's acceptance of strong evidence of the guilt of Jackson and Robinson.

> *Judgments reversed and case remanded for entry by the Court of Special Appeals of judgments of affirmance of the judgments of the Criminal Court of Baltimore.*